IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DISTRICT

| | | |
|---|---|---|
| VIVIAN SCOTT and NELL SCOTT, III, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW-06-2107 |
| TRACY DAVIS, *et al.*, | * | |
| Defendants. | * | |
| | **** | |

## MEMORANDUM OPINION

Plaintiffs Vivian Scott and Nell Scott (collectively "Plaintiffs") bring this action against Defendants Tracy Davis ("Davis"), Paul Barnes ("Barnes"), IREIS, LLC ("IREIS"), Carlene Charles ("Charles") (collectively "IREIS Defendants"), Christian Title and Escrow, Inc. ("Christian Title") and GN Mortgage ("GN") (collectively "Defendants"), asserting various claims related to proceedings to transfer Plaintiffs' residence ("Home") in order to prevent foreclosure on the property. Currently pending before the Court is GN's Motion to Dismiss Plaintiffs' Complaint [11], Christian Title's Motion to Dismiss Plaintiffs' Complaint [30], and Davis, Barnes, and IREIS's Motion to Vacate Default Judgment [39]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. On July 17, 2007, the Court held a hearing concerning the motions and heard from all the parties.[1] Having considered the arguments of Plaintiffs and Defendants, and for the reasons articulated at the hearing and discussed below, the Court will GRANT GN's motion to dismiss, GRANT Christian Title's motion to dismiss, and GRANT Davis,

---

[1] Charles was not present at the hearing, nor has she filed a response or any motions with the Court. To date, she is unrepresented by counsel in this lawsuit.

Barnes, and IREIS's motion to vacate default judgment.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs reside in and claim to retain ownership of Home, which is located in Prince George's County, Maryland. In 2005 they faced foreclosure proceedings on their mortgage. The complaint does not state the date or nature of, but refers to, a bankruptcy proceeding on behalf of Vivian Scott as a result of the potential mortgage foreclosure on Home.

Plaintiffs allege that sometime after May 22, 2005, Barnes and Charles approached Plaintiffs with an offer to resolve the mortgage foreclosure. In conjunction with IREIS, Plaintiffs claim that Barnes and Charles said that they would, among other things: (1) postpone foreclosure, (2) save Home from foreclosure, (3) arrange for Plaintiffs to become lessees or renters of Home, (4) arrange for Plaintiffs to have an option to repurchase Home, and (5) arrange to satisfy or pay off the mortgage obligation.

In order to accomplish these goals, IREIS Defendants arranged for Plaintiffs to transfer Home to Davis on or about September 19, 2005. Plaintiffs do not admit that they entered into a written contract to sell Home to Davis. Instead, Plaintiffs say that despite the lack of any written instrument, Defendants went forward with the transaction. Plaintiffs allege that the lease employed in the transaction transferred title to Davis, but identified IREIS as the landlord, and did not include an option to repurchase Home as promised. Christian Title admits that it provided the closing proceedings for the transaction, and recorded the deed in Baltimore on or about March 6, 2006.

Plaintiffs allege many other misdeeds on the part of IREIS Defendants: (1) Charles or an associate forged a letter to the Bankruptcy Court which purported to be from Vivian Scott and resulted in a dismissal of her bankruptcy case; (2) Davis, along with other unspecified defendants,

encumbered the property with more loans than were necessary to pay off the mortgage and used the money to pay unnecessary exorbitant fees to IREIS Defendants and Christian Title; (3) IREIS Defendants told Plaintiffs that they were guaranteed to keep Home; (4) IREIS Defendants are not licensed lenders; therefore, making what was essentially a second mortgage loan under Maryland law was an illicit activity.

It appears that Davis took out two trust loans for Home which were financed by GN. Plaintiffs allege that these deeds of trust were not recorded and that GN gave loan instructions to Christian Title and reviewed the settlement sheet (which included unnecessary and exorbitant fees). GN stated during the hearing that, as a matter of public record, GN sold the deeds of trust in 2005.

Plaintiffs allege that Defendants did not fulfill a number of statutory duties imposed on them by Maryland Real Property Code § 7-306 (then Senate Bill 761) and under the Truth in Lending Act 15 U.S.C. § 1602: (a) the provision of a Foreclosure Consulting Contract, (b) proper notification of lease activities, and (c) the provision of a Notice of Recission.  Plaintiffs argue that because these duties were unfulfilled they may rescind the arrangement under Maryland law.

This action was removed from the Circuit Court for Prince George's County, Maryland, on August 14, 2006.  On September 5, 2006, GN filed a Motion to Dismiss Plaintiffs' Complaint [11]. On April 23, 2007, Christian Title filed a Motion to Dismiss Plaintiffs' Complaint [30].  On April 30, 2007, the Court ordered a default verdict for want of answer against defendants Davis, Barnes, IREIS, and Charles [35].  On May 18, 2007, Davis, Barnes, and IREIS filed a Motion to Vacate Default Judgment [39].  Plaintiffs oppose the motions.  GN's Motion to Dismiss, Christian Title's Motion to Dismiss, and Davis, Barnes, and IREIS's Motion to Vacate Default Judgment have been fully briefed and are ripe for consideration.

## STANDARD OF REVIEW

### *Motion to Vacate Default Judgment Under Rule 55*

Under the Federal Rules of Civil Procedure, a judgment for default may be set aside by the Court for good cause shown.  Fed. R. Civ. P. 55(c).  The Federal Rules of Civil Procedure include a variety of elements that may constitute good cause for setting aside judgment, including: mistake, surprise, inadvertence, or excusable neglect.  Fed. R. Civ. P. 60(b)(1) ("Rule 60").  The Fourth Circuit views default judgment as particularly harsh, construing Rule 60 liberally under circumstances where default judgment is involved.  *Point PCS, LLC v. Sea Haven Realty & Constr.*, 95 Fed. Appx. 24, 27 (4th Cir. 2004).  The dispositive issue in making a showing to vacate default judgment under Rule 60 is whether the party itself is blameless.  *Id.*

The Fourth Circuit has held that where the blame for the entry of a default verdict against a party lies with that party's attorney, the party itself is blameless and the default verdict should be vacated.  *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988) (overturning district court's refusal to vacate a default verdict where the party's attorney was to blame for the entry of default).  When the facts indicate that a party is blameless, the party must further show that it (1) acted to rescind in a timely fashion, (2) can demonstrate a lack of prejudice to the non-movant, and (3) will proffer a meritorious defense.  *Id.*

### *Motion to Dismiss Under Rule 12(b)(6)*

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded

material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true.  *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").  Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged."  *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Thus, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## ANALYSIS

### I.        Concerning Defendant Charles.

The record shows that Charles was served with process on October 21, 2006.  As noted above, Defendant Charles had default judgment entered against her on April 30, 2007.  To date, Charles is unrepresented in this suit, and has failed to file any documents with the Court.  As such, the default judgment against Charles will remain intact.

**II.      The Motion to Vacate Default Judgment.**

Davis, Barnes, and IREIS (collectively "Movants") have moved to vacate the default judgment entered against them.  The record shows that Movants attempted to enter a pleading but that it was rejected because their attorney was not a member of the bar of this Court [22].  Thereafter, Movants failed to file a proper pleading with the Court.  On April 30, 2007, the Court entered default judgment.

For the Court to consider setting aside a default judgment, Movants must show that they are blameless as to their failure to respond to the complaint.  *Point*, 95 Fed. Appx. at 27.  Here, Movants' response was not accepted by the Court because their attorney had not been admitted to the bar of this Court.  The Court believes that responsibility for ameliorating this snafu lay with Movants' attorney, and not Movants themselves.  Therefore, as blame lies with Movants' attorney, discussed *supra*, the Court finds that Movants themselves are considered blameless.  *Id*.

Since Movants' are blameless, the Court must vacate default judgment if the Movants (1) acted in a timely fashion, (2) demonstrated a lack of prejudice to the non-movant, and (3) can proffer a meritorious defense.  *Augusta*, 843 F.2d at 812.  On May 18, 2007, Movants filed their motion to vacate.  Therefore, the Court finds that Movants acted in a timely fashion.  Here the Court finds, as the Fourth Circuit found in *Augusta*, that "As to prejudice, [there is] no disadvantage to [the Plaintiff] beyond that suffered by any party which loses a quick victory."  *Id*.  Finally, during the motions hearing, counsel for Movants represented to the Court that she is prepared to respond to Plaintiffs' averments with a meritorious defense, and suggested the same in the motion to vacate itself.  Therefore, the Court finds that Movants have proffered a meritorious defense.  The Court will GRANT Davis, Barnes, and IREIS Motion to Vacate Default Judgment.

6

**III.  Dismissal for Failure to Comply with Pleading Requirements.**

Christian Title and GN have individually moved to dismiss Plaintiffs' Complaint for failure to state a claim.  The Court finds that Plaintiffs' Complaint fails to comply with the pleading requirements of the Federal Rules of Civil Procedure, which state "A pleading ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court expects that each count of a complaint will aver specific actions by particular Defendants which are clearly in violation of the relevant law.  The Court finds Plaintiffs' Complaint to be deficient; rather than act as interpreter, the Court will banish the unsatisfactory Complaint in its entirety with regard to Davis, Barnes, IREIS, Christian Title, and GN, with leave to amend.  This accords with the preference of the Court to permit litigants to clarify deficient and/or unintelligible pleadings.  *See, e.g.*, Fed. R. Civ. P. 12(e); *Bureerong v. UVAWAS,* 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) (citing William Schwarzer, *et al.*, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:349).

In order to expedite the pleading process the Court will briefly set forth a few observations, without making any binding determinations.

A.  Claims regarding GN.

The Court has reservations with respect to Plaintiffs' attempts to embrace GN into any alleged wrongdoing beyond possibly maintaining GN as a necessary party to address the issue of a recision of the deeds of trust.  Accordingly, Plaintiffs must plead with particularity what violations of law, if any, GN has committed that allow Plaintiffs to seek relief in this Court.  Further, the Court expects Plaintiffs to determine who currently possesses the deeds of trust from which Plaintiffs seek equitable relief.  As the Court suggested at the hearing, Plaintiffs must either present the Court with

a cognizable legal theory for holding GN accountable for these deeds (e.g. by demonstrating that if the debt was sold after the genesis of this suit that Maryland law holds GN accountable), or Plaintiffs may locate the party who now holds the debt and add it to this suit. *See*, *e.g.*, Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 18(b); Fed. R. Civ. P. 19(a).

B.   Violations of Maryland's Homeowner Foreclosure Act.

Plaintiffs have also asserted claims under Maryland's Homeowner Foreclosure Act, MD. CODE ANN., REAL PROP. §§ 7-301 (2007) *et. seq.* ("the Foreclosure Act").   While the Court believes that Plaintiffs may be able to state cognizable claims under this statute in regard to some Defendants, the Court reminds Plaintiffs that the Foreclosure Act only applies to potential defendants whom Plaintiffs can aver classify as "foreclosure consultants."  *See Id.* at §§ 7-302.  In particular, the statue specifically states that it does not apply to mortgage lenders.  *Id.* at §§ 7-302(a)(7).

C.   Violations of Lending Laws.

Plaintiffs have asserted claims under the Maryland Secondary Mortgage Loan Law, the Truth in Lending Act, and the Real Estate Settlement Procedures Act.  The briefs filed for the motions hearings focused on whether Plaintiffs had standing to bring suit under these statutes.  In a recent case regarding a similar alleged "foreclosure rescue scam," the Court construed the meaning of the terms at issue here liberally.  *See Johnson v. Wheeler*, --- F.Supp.2d ----; 2007 U.S. Dist. Lexis 48439, *23; 2007 WL 1840053, *6-7 (D. Md. 2007).  That case may be instructive with respect to the extent to which Plaintiffs can assert claims under Maryland's lending laws.  At any rate, the Court will consider well pled allegations under these statutes as long as the Plaintiffs indicate how (1) particular Defendants (2) took specific actions that (3) violated provisions of these statutes.

D.  Civil Conspiracy.

Plaintiffs attempt to set forth a claim based on a theory of civil conspiracy, but do not clearly

lay out sufficient facts to make out the elements of such a charge.[2]  Instead, Plaintiffs incorporate

the preceding averments and state that Defendants employed "unlawful means to accomplish their

goals."  Compl. ¶ 72.  Plaintiffs must aver not only the elements of the civil conspiracy, but the

underlying tortious conduct by which the alleged conspiracy was formed to commit.  Inasmuch as

the underlying conduct appear to sound in fraud, the Federal Rules of Civil Procedure require that

allegations of fraud be pled at a heightened standard of particularity.  Fed. R. Civ. P. 9(b).

E.  Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim.

The Court also expresses reservations as to whether Plaintiffs can adequately set forth a

cognizable RICO claim.  It is true that a person whose property rights are endangered by RICO

violations have standing to file civil suit.  18 U.S.C. 1964(c).  However, the Supreme Court has

specified that in order to succeed, Plaintiffs must successfully allege four elements of a RICO claim:

(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L.*

*v. Imrex Co.*, 473 U.S. 479 (1985).  The Fourth Circuit has made it clear that in order to fulfil the

"pattern" element of a RICO claim, there must be evidence of widespread fraud.  *Menasco, Inc. v.*

*Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989).  Here, Plaintiffs have only averred wrongdoing in

---

[2]  Under Maryland law, the elements of a civil conspiracy are:
> (1) Two or more persons by agreement or understanding;
> (2) Agreed to commit some unlawful tortious act or to use unlawful
> or tortious means to accomplish an act not in itself illegal; and
> (3) Actual legal damage resulted to the plaintiff.

*See Van Royen v. Lacey*, 262 Md. 94 (Md. 1971).

one transaction between Plaintiffs and Defendants; there is neither evidence of past fraudulent activity, nor sufficient allegations that future fraudulent activity is likely.  *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001); *see also*, *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154-55 (4th Cir. 1987).  Therefore, should Plaintiffs choose to plead violations of RICO in the amended Complaint, they must meet the heavy burden of proof necessary to survive a motion to dismiss.

F.  Breach of Fiduciary Duty.

Plaintiffs claim that several Defendants breached fiduciary duties owed to them.  There is, of course, a basis in the law for Plaintiffs to aver that any defendant who acted as a real estate "agent" or "broker" owed them a fiduciary duty.  *See*, *e.g.*, MD. CODE ANN., BUS. OCC. & PROF., § 17-532(c)(1)(2003); *Proctor v. Holden*, 540 A.2d 133, 141 (Md. Ct. Spec. App. 1988).  Further, Plaintiffs may properly allege that any party in whom they reposed a special confidence, meaning that said party was in good conscience required to act in good faith with deference to Plaintiffs' best interest, owed Plaintiffs a fiduciary duty.  *See Anderson v. Watson*, 118 A. 569 (Md. 1922); *Travel Committee Inc. v. Pan American World Airways, Inc.* 603 A.2d 1301 (Md. App. 1992).  Plaintiffs, however, are reminded that a generalized finding of fiduciary duty cannot be made merely as a result of a business relationship or intricate contractual relations.  *Travel Committee*, 603 A.2d at 1322.  Therefore, in order to adequately pled a claim for breach of fiduciary duty, Plaintiffs must specifically aver the existence of a fiduciary relationship and set forth the conduct that breached such a relationship.

## CONCLUSION

For the reasons stated above and articulated at the motions hearing, the Court will GRANT

GN's Motion to Dismiss [11], GRANT Christian Title's Motion to Dismiss [30], and GRANT

Davis, Barnes, and IREIS's Motion to Vacate Default Judgment [39].  Furthermore, Plaintiffs are

DIRECTED to file an Amended Complaint in accordance with the instructions and directions set

forth in this Memorandum Opinion.  An Order consistent with this Opinion shall follow.


July 27, 2007                                                            /s/
Date                                                        Alexander Williams, Jr.
                                                            United States District Court

11